NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

KEVIN E. WELLS AND ELISA M. WELLS, *Plaintiffs/Appellees*,

*v.*

JOSEPH W. ZUMMALLEN, SUSAN K. ZUMMALLEN,
*Defendants/Appellants*.

No. 1 CA-CV 22-0326
FILED 2-16-2023

Appeal from the Superior Court in Yavapai County
No. P1300CV201900989
The Honorable Michael P. McGill, Judge

**AFFIRMED**

COUNSEL

Holdsworth Law Firm PC, Prescott
By Michael L. Holdsworth, Lori Marschke
*Co-counsel for Plaintiffs/Appellees*

Matthew J. Mansfield PLLC, Flagstaff
By Matthew J. Mansfield
*Co-counsel for Plaintiffs/Appellees*

J. Jeffrey Coughlin PLLC, Prescott
By J. Jeffrey Coughlin
*Counsel for Defendants/Appellants*

---

## MEMORANDUM DECISION

Judge Randall M. Howe delivered the decision of the court, in which Presiding Judge David D. Weinzweig and Judge D. Steven Williams joined.

---

**H O W E**, Judge:

**¶1**        Joseph W. ZumMallen and Susan K. ZumMallen appeal from the trial court's granting Kevin E. Wells and Elisa M. Wells summary judgment. For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

**¶2**        The ZumMallens own an undeveloped parcel of land next to the Wells's property in Yavapai County. The properties had been owned by the Lane-Smith Investment Company ("Lane-Smith") until 1931. The ZumMallens bought their property from someone who had purchased it from Lane-Smith. Beginning on the parcel just south of the ZumMallen property, Sunnyside Road passed over its southeast corner, ran north between the parties' properties, cut through the northwest portion of the Wells property, and sliced across the property directly north of the Wells ("northern property") before merging with other roads. By the time the ZumMallens acquired their property, they did not have legal access to reach or drive on Sunnyside Road and other existing roadways.

**¶3**        To obtain access to these roadways, the ZumMallens sent letters to surrounding property owners, including the Wells and their property's previous owner, asking them to sign a quitclaim deed to create an easement for access. They explained that they had actual, but not legal, access to their property, making it a landlocked parcel. Many property owners signed quitclaim deeds in the ZumMallens' favor. This included the owner of the northern property, who granted the ZumMallens an easement over the portion of Sunnyside Road that cut through their property. The Wells, however, refused to grant an easement to drive over their property.

**¶4**        Instead, the Wells asked the ZumMallens to sign a quitclaim deed to stop pursuing access across their property. This time, the ZumMallens refused and renewed their request for an easement. The Wells consequently sued the ZumMallens for declaratory relief that no express or implied easement existed to encumber their property. The ZumMallens

counterclaimed that their property had an implied easement across the Wells property and that they were entitled to condemn a private way of necessity across it.

¶5 The Wells moved for summary judgment, arguing that the ZumMallens did not have an express easement across the Wells property because they had never been granted one. The ZumMallen property's previous owner had purchased the land from Lane-Smith, who had granted her and her heirs or assigns access to roads over land it owned. But by that time Lane-Smith had already sold a parcel of land that included the Wells property. Thus, the ZumMallens never acquired an easement over that parcel. The Wells further argued that the ZumMallens did not have an implied easement across the Wells property and did not satisfy the legal requirements to condemn it. They argued last that the ZumMallens did not satisfy the common law requirements for a private way of necessity because they had access to their property through two alternative routes.

¶6 In response, the ZumMallens argued that these alternate routes were not reasonable alternatives because they would have to seek multiple easements through multiple properties, which required "substantial legal gymnastics and physical earth moving, grading and expense." During the hearing on the motion, the ZumMallens argued that the easement on the Wells property "would be the easiest possible transition from their property to egress," while the alternate routes were "full of rocks and hills and other people's properties." The court asked the ZumMallens about access to Sunnyside Road on the northern property. The ZumMallens noted that the owner of the northern property, through which Sunnyside Road extended, had granted them an easement to drive on the road. But the ZumMallens had not pursued an easement to cross from their property line, through the existing posts and chain, to that roadway because they sought to follow the "traveled path."

¶7 The court granted the Wells summary judgment on all counts, finding that the ZumMallens did not have an express or implied easement across their property and were barred from condemning a private way of necessity over it. The court found that in a private condemnation claim, the ZumMallens should have "attempt[ed] all remedies" to show that they could not gain access to the northern property for ingress and egress through the existing posts and chain. Although the road ran parallel to the ZumMallen parcel, "that, nevertheless, [did not] eliminate the Wells'[s] interest in that property and ownership." The court concluded that the ZumMallens had not shown that the route through the northern property was inadequate or unavailable. The ZumMallens timely appealed.

**DISCUSSION**

¶8        The ZumMallens argue that the trial court erred in finding that they were barred from privately condemning the northwest portion of the Wells property because their property was landlocked. As a threshold matter, the Wells point out that the ZumMallens failed to comply with Arizona Rule of Civil Procedure 56(e), requiring that a response, by affidavits or other evidence, "set forth specific facts showing a genuine issue for trial." Although the ZumMallens did not produce evidence to support their response to the motion for summary judgment, such as affidavits or deposition testimony, we prefer to decide cases on their merits. *Ramos v. Nichols*, 252 Ariz. 519, 523 ¶ 13 (App. 2022).

¶9        We review a grant of summary judgment de novo, "viewing the facts and inferences in the light most favorable to the non-prevailing party." *Hale v. Window Rock Unified Sch. Dist.*, 252 Ariz. 420, 423 ¶ 6 (App. 2021) (quoting *BMO Harris Bank N.A. v. Wildwood Creek Ranch, LLC*, 236 Ariz. 363, 365 ¶ 7 (2015)). A court properly grants summary judgment if no genuine dispute of material fact exists and "the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). A trial court should grant summary judgment "if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Orme Sch. v. Reeves*, 166 Ariz. 301, 309 (1990).

¶10        The trial court properly granted the Wells summary judgment. A landowner or "person entitled to the beneficial use of land" may pursue a private condemnation to construct and maintain a private way of necessity over another's land only when his land "is so situated with respect to the land of another that it is necessary for its proper use and enjoyment to have and maintain a private way of necessity." A.R.S. § 12–1202(A). Arizona courts interpret this to mean that "only a party owning or having a beneficial use in land that is 'land-locked' may bring an action to condemn a private way of necessity across the land of another." *Solana Land Co. v. Murphy*, 69 Ariz. 117, 123 (1949). The party seeking to condemn land has the burden to show a "reasonable necessity" for the taking, which requires "proving either the unavailability or inadequacy of an alternative access route." *Siemsen v. Davis*, 196 Ariz. 411, 417 ¶ 28 (App. 2000).

¶11        The ZumMallens did not meet this burden because they offered no evidence to prove an alternate access route was unavailable or inadequate. Their access to drive on Sunnyside Road across the northern

property is undisputed. But their easement did not extend to grant them access to get to the road. The ZumMallens did not even attempt to acquire an easement from the owner of the northern property for ingress and egress through the existing posts and chain to access Sunnyside Road.

¶12         Although the availability of an alternate route does not prevent a private condemnation, *Tobias v. Dailey*, 196 Ariz. 418, 421–22 ¶ 14 (App. 2000), the ZumMallens also did not demonstrate the unreasonableness or inadequacy of the available route through the existing posts and chain. At the hearing, they merely argued that crossing over the Wells property was more reasonable or convenient because they were following the "traveled path" of Sunnyside Road. But they did not provide any evidence or affidavit to support their argument. On appeal, they rely on a summary of their expert witness's opinion found in their initial disclosure statement. The Wells argue that this is inadmissible evidence. But that evidence concerns the reasonableness of alternate routes which we do not reach.

¶13         Further, inconvenience alone does not determine the adequacy of an alternate route. *Siemsen*, 196 Ariz. at 416–17 ¶¶ 19–24 (holding that the alternate route—increasing the plaintiffs' travel time "by approximately two hours of rough road"—was not inadequate because allowing condemnation would have been detrimental to the defendants' ranching operations). The ZumMallens did not provide any evidence that accessing Sunnyside Road through the existing posts and chain would be, for example, uneconomical or disruptive. *See Dabrowski v. Bartlett*, 246 Ariz. 504, 517–18 ¶ 45 (App. 2019) (holding that counterclaimant was entitled to a private condemnation after evidence demonstrated that building a road across the alternate route would cause a disturbance and leave about 90 square feet on the lot for the counterclaimant's home).

¶14         The ZumMallens, therefore, did not raise a genuine dispute of material fact. The parties argue about the adequacy of other alternate routes. But we need not consider the availability and adequacy of every possible route. Because the ZumMallens have not proved a reasonable necessity for the private condemnation, we do not consider whether they exercised good or bad faith in seeking to condemn a portion of the Wells property. *See Siemsen*, 196 Ariz. at 414 ¶ 10.[1]

---

[1]         The Wells also argue that the ZumMallens' condemnation claim fails because they failed to satisfy condemnation procedures pursuant to A.R.S.

**CONCLUSION**

**¶15**        For the foregoing reasons, we affirm. The Wells request attorneys' fees and costs under A.R.S. §§ 12–1103, 12–341, 12–341.01, and 12–349, and the ZumMallens request attorneys' fees and costs under A.R.S. §§ 12–1840 and 12–341. Neither party is entitled to attorneys' fees on appeal. This is not an action arising from a contract, *see* A.R.S. § 12–341.01, and the Wells did not comply with A.R.S. § 12–1103(B). Nor are the ZumMallens' arguments so meritless that awarding fees is justified under A.R.S. § 12–349. As the successful party, however, the Wells may recover their taxable costs on appeal upon compliance with Arizona Rule of Civil Appellate Procedure 21.



AMY M. WOOD • Clerk of the Court
FILED:    AA

---

§ 12–1116(A). But because we affirm summary judgment under A.R.S. § 12–1202, we do not reach this argument.